# In the United States Court of Federal Claims
No. 19-1677C
Filed: November 4, 2019

```
* * * * * * * * * * * * * * * * *  *
                                    *
ALAN JOHN MORAVETZ,                 *
                                    *
              Plaintiff,            *
                                    *
v.                                  *
                                    *
UNITED STATES,                      *
                                    *
              Defendant.            *
                                    *
* * * * * * * * * * * * * * * * *  *
```

## ORDER

**HORN, J.**

On October 29, 2019, pro se plaintiff Alan John Moravetz filed a complaint in the United States Court of Federal Claims, along with a motion to proceed in forma pauperis. Plaintiff's complaint begins:

> If you receive one of my **CD's,** you will see only about a quarter of the evidence that I am willing to provide at this time.
>
> *After reading this entire letter, please do not invent the excuse about the Statute of Limitations Clause. The Statute of Limitations Clause for this particular case is unconstitutional due to the fact that the United States Government created a Top-Secret conspiracy against me to cover-up the worst inhumane acts of terrorism involving total control and enslavement thru cybernetic GPS microchip implant technology. Also, there is no written documentation what-so-ever on a discovery of the objects (cybernetic implants) that you can clearly see on the X-rays, C.T., P.E.T. and M.R.I. scans that accompany this letter due to a tyrannical United States Government that has criminally covered-up and falsified diagnostic reports.*[1]

---

[1] Capitalization, grammar, punctuation, abbreviations, spelling, emphasis, and choice of words when quoted in this Order are as they originally appear in plaintiff's submissions to this court.

7018 0040 0001 1393 2478

Plaintiff also alleges that "I have been violated, tortured and terrorized to the extreme by a corrupt tyrannical United States Government. (Illegal surgical procedures, implanting of *GPS tracking cybernetic implant microchips,* with the intent to harm)."

Plaintiff further contends that

For me this conspiracy dates back to my birth!

This the worst terrorist conspiracy since the beginning of man-kind would implicate that the presidential involvement would be from our current President - back to - as far as -President Lyndon B. Johnson, and now I am thinking maybe even further back; possibly to the 1940's.

This conspiracy would include a large number of people, companies, organizations and institutes that are affiliated with the United States Government (all Presidents dating back to the early 40's; their administration, cabinet and affiliates, Congress, Military) (all branches) Intelligence, C.I.A., Secret Service, D.O.D., Governors, Senators, F.B.I., law enforcement (federal, local & state authorities),( N.S.A., D.E.P., United Parcel Service, Teamsters, doctors, surgeons, psychiatrists, pharmaceutical and nutrition companies, Hollywood, the music industry, silicon valley and other multimillion & billion dollar companies, organizations, etc.) just to name a few.

Plaintiff also contends that "[i]n April of 2010, I was shot close to 12 times, maced in the entire face and ears at my work place (United Parcel Service, Harrisburg, Pa.), by a devious Swatara Township S.W.A.T. Team, orchestrated by a crooked cop," "who had harassed me throughout the years while I lived in Swatara township, Pa." He also states that "[t]he following day I was handcuffed and shackled once more, then sent to two different mental institutes." He also states "[o]n July 8, 2010, an ambulance pulled up, they handcuffed and shackled me once more and sent me to (Danville State Hospital, Danville, Pa)."

Plaintiff separately alleges that:

The United States Government then went to my community and ruined my reputation with the township and my landlord. I explained to my landlord that I had just lost my job. He said that he did not care and he asked me to vacate his premises. I replied that I always made my payments on time my entire life for any loans or payments due, and to you. Now that I just lost my job you are kicking a man when he is down? He gave me no answer and took me to court. I believe that I was dealing with a corrupt malicious judge that was paid off. He had no mercy saying that I had 11 days to vacate the premises.

More broadly, plaintiff contends that:

*Through Military Intelligence and cybernetic technology, the United States Government has enslaved me most of my life. They torture me on a daily basis as an experimental guinea pig and training tool for their sick satanic N.W.O. cult enslavement. The Elite (Free Mason, Illuminati – Secret Society) have embedded within me the MARK & CODE as their symbolic GOD (The All-Seeing EYE) for their New World Order. I have the symbolized pyramid markings & Code under and inside my left EYE.*

*My health is seriously affected by these cybernetic microchip Implants and the deterioration from within my body dramatically affects my aging and cellular process. The U.S. Government has the capability to adjust the volume of the implants to a higher frequency level which causes severe pain to that part of my body.*

*Several times the United States Government has attacked my heart, giving me mini heart attacks, to my liver causing infections and to my head causing migraines 10x worse then you could ever imagine and eventually blacking me out. My stomach swells up like a balloon to the point where I vomit, sometimes with blood mixed in. They paralyze me to the point where I cannot walk which forces me to use crutches that I need to carry in my vehicle at all times for such incidents. Several times I have been in excruciating pain for numerous days in a row until they turn it off In November of 2013, they increased the volume of the **cybernetic** microchip implant in my colon to its highest frequency for two days in a row where I could hardly walk. I was in excruciating pain and on the second day I began to bleed out. There was a lot of blood in the toilet. They control all of my bodily functions They control my colon and my bladder which forces me to go to the bathroom immediately when activated. They control my heartbeat and can slow it down via cybernetic microchip implant within my heart which causes me to fall asleep; which is one of the ways that they can knock me out along with the cybernetic microchip implants in my head. I have had several mini heart attacks due to the cybernetic microchip implants throughout the years which have seriously affected my speech.*

*They have mind control techniques via cybernetic microchip implants that they can perform on me thru some of the implants in my head (cerebral cortex) in which I become unaware of my surroundings and what I am doing sometimes.*

For these claims, plaintiff seeks $120,000,000,000.00

## DISCUSSION

The court recognizes that plaintiff is proceeding pro se. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, a pro se plaintiff is entitled to a more liberal construction of the pro se plaintiff's pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Jackson v. United States, 143 Fed. Cl. 242, 245 (2019); Diamond v. United States, 115 Fed. Cl. 516, 524 (2014), aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied, 135 S. Ct. 1909 (2015). However, "there is no 'duty [on the part] of the trial court . . . to create a claim which [plaintiff] has not spelled out in his [or her] pleading . . . .'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9; and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Kelley v. Secretary, U.S. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("[A] court may not similarly take a liberal view of [] jurisdictional requirement[s] and set a different rule for pro se litigants only.").[2] Hale v. United States, 143 Fed. Cl. 180, 184 (2019) ("[E]ven pro se plaintiffs must persuade the court that jurisdictional requirements have been met." (citing Bernard v. United States, 59 Fed. Cl. 497, 499, aff'd, 98 F. App'x 860 (Fed. Cir. 2004))); Golden v. United States, 129 Fed. Cl. 630, 637 (2016); Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995))); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

"Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (citing

---

[2] Several recent, though unpublished, cases in the United States Court of Appeals for the Federal Circuit have cited Kelley v. Secretary, U.S. Dep't of Labor for the proposition that pro se litigants are not relieved of the requirement to prove that their claims fall within the jurisdiction of the court. 812 F.2d 1378, 1380 (Fed. Cir. 1987). See Curry v. United States, No. 2019-1486, 2019 WL 4927020, at *2 (Fed. Cir. Oct. 7, 2019); Rojas-Vega v. United States, No. 2019-1475, 2019 WL 3731313, at *2, n.3 (Fed. Cir. Aug. 8, 2019); Stekelman v. United States, 752 F. App'x 1008, 1010 (Fed. Cir. 2018).

Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); see also St. Bernard Parish Gov't v. United States, 916 F.3d 987, 992-93 (Fed. Cir. 2019) ("[T]he court must address jurisdictional issues, even sua sponte, whenever those issues come to the court's attention, whether raised by a party or not, and even if the parties affirmatively urge the court to exercise jurisdiction over the case." (citing Foster v. Chatman, 136 S. Ct. 1737, 1745 (2016)); Int'l Elec. Tech. Corp. v. Hughes Aircraft Co., 476 F.3d 1329, 1330 (Fed. Cir. 2007). The Tucker Act, 28 U.S.C. § 1491 (2018), grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289-90 (2009); see also United States v. Mitchell, 463 U.S. 206, 216 (1983); Alvarado Hosp., LLC v. Price, 868 F.3d 983, 991 (Fed. Cir. 2017); Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); N.Y. & Presbyterian Hosp. v. United States, 881 F.3d 877, 881 (Fed. Cir. 2018); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 571 U.S. 945 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Jackson v. United States, 143 Fed. Cl. at 245. In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The Ontario Power Generation, Inc. court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver . . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605-06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting

>Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . .
>Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [(1976)] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ont. Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. at 400); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); see also N.Y. & Presbyterian Hosp. v. United States, 881 F.3d at 881; Fisher v. United States, 402 F.3d at 1173 (noting that the absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act"); Jackson v. United States, 143 Fed. Cl. at 245 ("If the claim is not based on a 'money-mandating' source of law, then it lies beyond the jurisdiction of this Court." (citing Metz v. United States, 466 F.3d 991, 997 (Fed. Cir. 2006)).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 9-10 (1983)),

reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2019); Fed. R. Civ. P. 8(a)(1), (2) (2019); see also Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57, 570 (2007)). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1286 (3d ed. 2004)); "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014); see also Hale v. United States, 143 Fed. Cl. at 190. As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

Not only is plaintiff's complaint difficult to follow, but plaintiff's complaint also has failed to raise any claims which are within the jurisdiction of this court. Plaintiff appears to allege multiple acts of criminal conduct including "*the United States Government has enslaved me most of my life. They torture me on a daily basis as an experimental guinea pig and training tool for their sick satanic N.W.O. cult enslavement.*" To the extent that plaintiff may be asserting claims of criminal conduct, this court lacks subject matter jurisdiction to adjudicate such claims. The jurisdiction of the United States Court of Federal Claims does not include jurisdiction over criminal causes of action. See Joshua v. United States, 17 F.3d 378, 379 (Fed. Cir. 1994); see also Cooper v. United States, 104 Fed. Cl. 306, 312 (2012) ("[T]his court does not have jurisdiction over [plaintiff's] claims because the court may review neither criminal matters, nor the decisions of district courts." (internal citation omitted)); Mendes v. United States, 88 Fed. Cl. 759, 762, appeal dismissed, 375 F. App'x 4 (Fed. Cir. 2009); Hufford v. United States, 87 Fed. Cl. 696, 702 (2009) (holding that the United States Court of Federal Claims lacked jurisdiction over claims arising from the violation of a criminal statute); Fullard v. United States, 78 Fed. Cl. 294, 301 (2007) ("[P]laintiff alleges criminal fraud, a subject matter over which this court lacks jurisdiction." (citing 28 U.S.C. § 1491; Joshua v. United States, 17 F.3d at 379)); McCullough v. United States, 76 Fed. Cl. 1, 4 (2006) (finding that the United States Court of Federal Claims lacked jurisdiction to consider plaintiff's criminal claims), appeal dismissed, 236 F. App'x 615, reh'g denied, (Fed. Cir.), cert. denied, 552 U.S. 1050 (2007); Matthews v. United States, 72 Fed. Cl. 274, 282 (finding that the court lacked jurisdiction to consider plaintiff's criminal claims), recons. denied, 73 Fed. Cl. 524 (2006).

Plaintiff also appears to raise allegations that may sound in tort. Plaintiff alleges that the "*Government that has criminally covered-up and falsified diagnostic reports,*" and

7

plaintiff states that "I have been violated, tortured and terrorized to the extreme by a corrupt tyrannical United States Government. (Illegal surgical procedures, implanting of *GPS tracking cybernetic implant microchips,* with the intent to harm)." Plaintiff also alleges that "[t]he United States Government then went to my community and ruined my reputation with the township and my landlord." The Tucker Act specifically excludes tort claims from the jurisdiction of the United States Court of Federal Claims. See 28 U.S.C. § 1491(a) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.") (emphasis added); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993); Rick's Mushroom Serv. Inc., v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008); Alves v. United States, 133 F.3d 1454, 1459 (Fed. Cir. 1998); Brown v. United States, 105 F.3d 621, 623 (Fed. Cir.) ("Because Brown and Darnell's complaints for 'fraudulent assessment[s]' are grounded upon fraud, which is a tort, the court lacks jurisdiction over those claims."), reh'g denied (Fed. Cir. 1997); Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1070 n.8 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir.), cert. denied, 513 U.S. 961 (1994); Hampel v. United States, 97 Fed. Cl. 235, 238, aff'd, 429 F. App'x 995 (Fed. Cir. 2011), cert. denied, 565 U.S. 1153 (2012); Kant v. United States, 123 Fed. Cl. 614, 616 (2015) ("[Plaintiff's] claims for 'conversion' and 'fraud' sound in tort . . . ."); Cox v. United States, 105 Fed. Cl. 213, 218 (2012) ("[P]laintiffs contend that the United States has engaged in tortious conduct, including harassment and persecution, malfeasance, fraud, abuse, and deception . . . . The Court of Federal Claims does not possess jurisdiction to entertain claims sounding in tort."); Jumah v. United States, 90 Fed. Cl. 603, 607 (2009) ("[I]t is well-established that the Court of Federal Claims does not have jurisdiction over tort claims."), aff'd, 385 F. App'x. 987 (Fed. Cir. 2010); Woodson v. United States, 89 Fed. Cl. 640, 650 (2009); Fullard v. United States, 77 Fed. Cl. 226, 230 (2007) ("This court lacks jurisdiction over plaintiff's conspiracy claim because the Tucker Act specifically states that the Court of Federal Claims does not have jurisdiction over claims 'sounding in tort.'"); Edelmann v. United States, 76 Fed. Cl. 376, 379–80 (2007) ("This Court 'does not have jurisdiction over claims that defendant engaged in negligent, fraudulent, or other wrongful conduct when discharging its official duties'") (quoting Cottrell v. United States, 42 Fed. Cl. 144, 149 (1998)); McCullough v. United States, 76 Fed. Cl. 1, 3 (2006), appeal dismissed, 236 F. App'x 615 (Fed. Cir.), reh'g denied (Fed. Cir.), cert. denied, 552 U.S. 1050 (2007); Agee v. United States, 72 Fed. Cl. 284, 290 (2006); Zhengxing v. United States, 71 Fed. Cl. 732, 739, aff'd, 204 F. App'x 885 (Fed. Cir.), reh'g denied (Fed. Cir. 2006).

To the extent that any of the allegations in plaintiff's complaint sound in tort, or allege criminal conduct, as discussed above, this court does not have jurisdiction to adjudicate those claims. For the reasons discussed above, because this court does not have jurisdiction to hear any of plaintiff's claims, plaintiff's complaint must be dismissed for lack of subject matter jurisdiction. This court is the wrong court in which plaintiff can pursue any of the claims he has included in his complaint.

## CONCLUSION

For the reasons above, plaintiff's complaint is **DISMISSED**. Plaintiff's Application to Proceed In Forma Pauperis is **MOOT**. The Clerk of the Court shall enter **JUDGMENT** consistent with this Order.

**IT IS SO ORDERED.**

_____
**MARIAN BLANK HORN**
**Judge**